THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RAWLEIGH ARMES,

   *Plaintiff,*

              **Case No.:**

  vs.

RENTOKIL NORTH AMERICA,
INC. d/b/a TERMINIX,

   *Defendant.*

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, RAWLEIGH ARMES ("Armes" or "Plaintiff"), by and through his undersigned attorneys, states as follows in his Complaint against Defendant, RENTOKIL NORTH AMERICA, INC. d/b/a TERMINIX ("Rentokil" or "Defendant"), and in support states as follows:

**INTRODUCTION**

1. This is an action to secure relief, legal, equitable, injunctive, and punitive, based upon Rentokil's discriminatory employment practices in violation of Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* as amended by the Americans with Disabilities Act of 2008 ("ADAAA"), and also violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621, et seq., ("ADEA").

2. Armes was a manager supporting a Rentokil service location in Tampa, Florida.

3. In violation of the ADA and ADEA, Rentokil discriminated against Armes because of his disability and age when his work performance was sabotaged by his region manager. Armes was also retaliated against for engaging in protected activity, having complained of discrimination based upon his age and disability, when he was issued a performance improvement plan and then terminated by his region manager.

## PARTIES

4. Armes is an individual over eighteen years of age, residing and domiciled in Pasco County, Florida and is otherwise sui juris.

5. Defendant Rentokil is incorporated and headquartered in the state of Pennsylvania, and provides commercial and residential pest-control services in the Tampa Bay region. As a foreign corporation, Defendant is authorized to conduct business and is conducting business in the state of Florida.

## JURISDICTION AND VENUE

6. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Middle District of Florida because Defendant conduct business in, and all of the events giving rise to Plaintiff's claims occurred in Pasco County, Florida, which is within the Middle District of Florida.

7. Along with 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331, subject matter jurisdiction is further conferred upon this Court under 42 U.S.C. § 12101 *et seq.*, and 29 U.SC. § 621 *et seq.*

## ADMINISTRATIVE PROCEEDINGS

8.      Along with the timely filing his Charge of Discrimination against Rentokil with the Equal Employment Opportunity Commission ("EEOC") for the claims presented in the instant case, where the EEOC issued a the EEOC issued a Determination and Notice of Rights letter dated January 30, 2026, based on Plaintiff's allegations, Armes has met all administrative prerequisites for the bringing of this action.

## GENERAL ALLEGATIONS

9.      During all relevant times, Armes was an "employee" / "eligible employee" as defined by both the ADA and ADEA, and was born in the year 1958.

10.      At all times material hereto, Rentokil has been an "employer" as defined by both the ADA and ADEA.

11.      Armes has had to retain the undersigned counsel to bring the instant action for which attorney fees have been incurred and will continue to be incurred for said representation.

12.      After a corporate reorganization in October 2019, Armes continued his employment with Rentokil in a management role, where he served as a working brance manager, overseeing supervisory and administrative responsibilities while actively performing hands-on, day-to-day operational tasks alongside staff at the 1907 N US Hwy 301, Tampa, FL 33619.

13.      Armes is a qualified individual with actual disabilities, having a record of disabilities, and/or is regarded by Rentokil as has having disabilities—specifically a physical disability in the form of left shoulder/back scapula disability which requires continued medical treatment.

14. Armes' endured constant shoulder pain and the pain further substantially limited major life activities including the disruption of regular sleep.

15. At all relevant time herein, Armes was qualified to perform the essential duties of his branch manager position with or without a reasonable accommodation.

16. In March 2024, new region manager, Raymona ("Mona") Akouri, visited Florida to introduce herself to the local managers, including Armes.

17. After meeting Armes and gauging his age, Akouri authorized the diversion of sales representatives from the branch to undermine Armes' sales numbers. This tactic continued by Akouri against Armes until his termination.

18. Next, Armes reported a workplace shoulder injury in May 2024 by contacting the safety hotline, and Akouri was informed of Armes' injury.

19. Armes began proceeding with the internal workmens' compensation medical process, including medical treatment and medical appointments, rehab, and medication.

20. Akouri then began to take adverse actions against Armes because of his age and disability.

21. While Armes continued to perform all his work duties, Armes senior age required extensive rehabilitation, including medical appointments, physical therapy, and chiropractic and massage therapy,

22. Armes regularly communicated with Akouri multiple times each week via emails, telephone and zoom conferences. Armes also participated in zoom online meetings, with Akouri in attendance, while at medical appointments.

23. Akouri began to sabotage Armes work performance by disproportionately charging regional expenses of "ComfortTherm" insulation to the branch monthly profit and loss statement.

24. When Armes complained to Akouri about placing him in a negative light, Akouri promised reimbursement, and or a chargeback, to the branch account to correct the misallocation.

25. In an attempt to compromise Armes' performance and ethics, when the ComfortTherm product became unavailable, Akouri insisted that Armes inform customers that a different insulation product was actually the brand name "ComfortTherm" product.

26. Akouri further arbitrarily assigned work duties to Armes, and also improperly reassigned duties.

27. Contrary Armes' assigned duties, Akouri also held him accountable for not following-up on sales leads.

28. At a year in review meeting in December 2024, in the presence of over 30 individuals, Armes again complained to Akouri that she was sabotaging his work performance.

29. With her efforts to sabotage Armes' work performance, Akouri further began to scrutinize Armes' work performance and issued a negative performance improvement plan ("PIP") against Armes in December 2024.

30. However, other service locations had comparable performance metrics, and those branch managers were not scrutinized or harassed.

31. Without following company policy to prepare a corrective action report after issuing a PIP, upon the expiration of the 2-month time PIP time period, Akouri terminated Armes in February 2025.

32. Rentokil terminated Armes because of his age and shoulder disability.

33. Rentokil tolerated and cultivated a work environment that discriminated against Armes because of his disability and age.

34. Rentokil also ignored, disregarded, minimized, covered up, mishandled, or otherwise failed to respond properly to evidence of disability discrimination before and after Armes' termination.

**COUNT I**

**ADA DISCRIMINATION – Wrongful Termination and PIP**
**42 U.S.C. §§ 12101, *et seq.***

35. Armes re-alleges and incorporates by reference paragraphs 1 through 34 as though fully set forth herein.

36. Rentokil violated the rights of Armes under the Americans with Disabilities Act, 42 U.S.C. 12101, *et. seq.*, as amended ("ADA").

37. Rentokil is an employer subject to the ADA.

38. Armes is a qualified individual with actual disabilities, having a record of disabilities, and/or is regarded by Rentokil as has having disabilities – specifically a physical disability in the form of sleep apnea which requires continued medical treatment.

39. Armes's physical disability substantially limits one or more major life activities including, but not limited to, sleeping, eating, concentrating, and interacting with others.

40. Armes is a qualified individual with a disability because, with or without reasonable accommodation, he is able to perform the essential functions of maintenance technician.

41. Rentokil discriminated against Armes on the basis of his disability when he suffered an adverse employment action(s) in the form of a termination, performance improvement plan ("PIP"), arbitrary assignment of work duties, and also improper reassignment of duties.

42. Rentokil also treated Armes differently from, and less preferably than, other employees. For example, other branch managers were not subjected to the same performance standards.

43. At all relevant times, Armes's disability was known to Rentokil when he was discriminated against by Rentokil.

44. Armes has suffered damages as a result of Rentokil's unlawful actions.

45. Rentokil's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Armes, entitling Armes to punitive damages.

## <u>COUNT II</u>

### ADA RETALIATION – Wrongful Termination and PIP
### 42 U.S.C. § 12203

46.     Armes re-alleges and incorporates by reference paragraphs 1 through 34 as though fully set forth herein.

47.     Rentokil violated the rights of Armes under the Americans with Disabilities Act, 42 U.S.C. 12101, *et. seq.*, as amended ("ADA").

48.     Rentokil is an employer subject to the ADA.

49.     Armes engaged in statutorily protected expression by complaining of harassment and sabotage to his regional manager, Akouri, because of his disability and age.

50.     Rentokil issued Armes a performance plan ("PIP"), discharged Armes, arbitrarily assigned work duties to Armes, and also improperly reassigned duties in retaliation for pursuing his rights under the ADA.

51.     Each retaliatory act(s) was an adverse employment act constituting retaliation against Armes.

52.     There is a causal connection between Armes's protected activity and the adverse action.

53.     Armes has suffered damages as a result of Rentokil's unlawful actions.

54.     Rentokil conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of Armes's rights, entitling him to punitive damages.

<u>**COUNT III**</u>

**ADA RETALIATORY HOSTILE WORK ENVIRONMENT**
**42 U.S.C. § 12203**

55. Armes re-alleges and incorporates by reference paragraphs 1 through 34 as though fully set forth herein.

56. Rentokil violated the rights of Armes under the Americans with Disabilities Act, 42 U.S.C. 12101, *et. seq.*, as amended ("ADA").

57. Armes is an employer subject to the ADA.

58. Armes engaged in statutorily protected expression by complaining of harassment and sabotage to his regional manager, Akouri, because of his disability and age.

59. Rentokil issued Armes a performance plan ("PIP"), discharged Armes, arbitrarily assigned work duties to Armes, and also improperly reassigned duties in retaliation for pursuing his rights under the ADA.

60. A reasonable employee would find that Rentokil's repeated retaliatory acts would dissuade a reasonable person from making or supporting a charge of discrimination.

61. There was a causal connection between Armes's protected activity and the adverse action.

62. Armes has suffered damages as a result of Rentokil's unlawful actions.

63. Rentokil's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of Armes's rights, entitling her to punitive damages.

### **PRAYER FOR RELIEF (ADA Counts I through III)**

**WHEREFORE,** Armes respectfully requests that the Court enter judgment in

his favor and award him the following relief:

A.    An Order declaring that Rentokil violated his civil rights under the ADA;

B.    Statutory and equitable damages, including lost wages in the form of back pay, front pay, and other benefits lost as a result of Armes unlawfully being discriminated against, plus interest thereon;

C.    Compensatory and punitive damages in an amount to be determined at trial to compensate him for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, loss of enjoyment of life, and detrimental impact on her health caused by Rentokil's unlawful actions;

D.    The attorneys' fees and costs incurred by him; and

E.    Such other legal, injunctive, and equitable relief as may be just and appropriate for violations of the ADA, including an award of punitive damages, and injunctive relief requiring Rentokil to create new policies and procedures to address ADA violations.

## COUNT IV — ADEA (Retaliation)

64.    Armes re-alleges and incorporates by reference paragraphs 1 through 34 as though fully set forth herein.

65.    Armes engaged in statutorily protected activity for exercising his rights under the ADEA by complaining of discriminatory treatment by Rentokil.

66.    After Armes' complaints, Rentokil retaliated against Armes for pursuing his rights under the ADEA by the arbitrary assignment of duties; improper reassignment of duties, negative PIP review(s); and termination.

67.     There was a causal connection between Armes' protected activity and the adverse actions.

68.     Armes has suffered damages as a result of Rentokil's unlawful actions.

69.     Rentokil's actions were intentional, willful, malicious, and showed deliberate indifference to Armes' rights under the PDA.

## COUNT V — ADEA (Retaliatory Hostile Work Environment)

70.     Armes re-alleges and incorporates by reference paragraphs 1 through 34 as though fully set forth herein.

71.     Armes engaged in statutorily protected activity for exercising his rights under the ADEA by complaining of discriminatory treatment by Rentokil.

72.     After Armes' complaints, Rentokil retaliated against Armes for pursuing his rights under the ADEA when Armes suffered "a materially adverse employment action" in the form of ongoing harassment comprised of arbitrary assignment of duties; improper reassignment of duties, negative PIP review(s); and termination.

73.     There was a causal connection between Armes' protected activity and the adverse actions.

74.     Armes has suffered damages as a result of Rentokil's unlawful actions.

75.     Rentokil's actions were intentional, willful, malicious, and showed deliberate indifference to Armes' rights under the PDA.

## COUNT VI — ADEA (Discrimination)

76.     Armes re-alleges and incorporates by reference paragraphs 1 through 34 as though fully set forth herein.

77.    Rentokil violated the rights of Armes under the ADEA.

78.    While Armes was a qualified employee, Rentokil discriminated against him when it engaged in the arbitrary assignment of duties; improper reassignment of duties, negative PIP review(s); and termination.

79.    Rentokil treated Armes differently from, and less preferably than, other employees by not uniformly applying its workplace policies.

80.    Armes has suffered damages as a result of Rentokil's unlawful actions.

81.    Rentokil's actions were intentional, willful, malicious, and showed deliberate indifference to Armes' rights under the ADEA.

### PRAYER FOR RELIEF (ADEA Counts IV through VI)

**WHEREFORE,** Armes respectfully requests that the Court enter judgment in his favor and award him the following relief:

A.    An Order declaring that Rentokil violated his civil rights under the ADEA;

B.    Statutory and equitable damages, including lost wages in the form of back pay, front pay, and other benefits lost as a result of Armes unlawfully being discriminated against, plus interest thereon;

C.    Compensatory and punitive damages in an amount to be determined at trial to compensate him for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, loss of enjoyment of life, and detrimental impact on her health caused by Rentokil's unlawful actions;

D.    The attorneys' fees and costs incurred by him; and

E.    Such other legal, injunctive, and equitable relief as may be just and appropriate for violations of the ADEA, including an award of punitive damages, and injunctive relief requiring Rentokil to create new policies and procedures to address ADEA violations.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Armes demands a trial by jury on all counts so triable in this action.

Dated:  April 24, 2026                          Respectfully submitted,

/s/ *Derek P. Usman*
Derek P. Usman
Florida Bar No. 0120303
Email: derek@usmanfirm.com
**The Usman Law Firm, P.A.**
505 E Jackson Street, Suite 305
Tampa, FL 33602
(813) 377-1197 telephone
*Attorney for Plaintiff*